| | | |
|---|---|---|
| UNITED STATE OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| DESMOND MARQUIS STONE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss his indictment charging two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 11). Defendant Stone argues that, under North Carolina's statutory sentencing scheme, he has no prior conviction for which he could have received a term of imprisonment exceeding one year, and thus, his criminal record contains no predicate felony for purposes of § 922(g)(1). Defendant, however, has a prior 2012 North Carolina conviction for Felony Larceny, for which he received a sentence of imprisonment of 5-15 months. See Judgement, Def. Ex. 1. Stone argues that this conviction does not qualify as a § 922(g)(1) predicate because the last nine months of his sentence were to be served on "post-release supervision," which he claims is not part of his term of imprisonment. The Court disagrees, and accordingly DENIES Defendant's Motion to Dismiss.

## I. FACTS

### A. North Carolina Structured Sentencing and the Justice Reinvestment Act

The Fourth Circuit has summarily explained the practicalities of North Carolina structured sentencing:

North Carolina's Structured Sentencing Act creates felony sentences strictly contingent on two factors: the designated "class of offense" and the offender's "prior record level." [See N.C. Gen. Stat. § 15A-1340.13(b)]. The sentencing judge calculates the offender's prior record level by adding together the points, assigned by the Act, for each of the offender's prior convictions. N.C. Gen. Stat. § 15A-1340.14(a). The judge then matches the offense class and prior record level using a statutory table, which provides three sentencing ranges – a mitigated range, a presumptive range, and an aggravated range. Id. § 15A-1340.17(c). The judge must sentence the defendant within the presumptive range unless the judge makes written findings of aggravating or mitigating factors. Id. §§ 15A-1340.13(e) & 15A-1340.16(c). And the judge may sentence a defendant within the aggravated range only if the state provides the defendant notice of its intent to prove aggravating factors, and the jury finds such factors beyond a reasonable doubt or the defendant pleads to their existence. Id. § 15A-1340.16 (a6). Once the judge selects the applicable range, the judge must choose the defendant's minimum sentence from within that range; a separate statutory chart provides the corresponding maximum term. Id. § 15A-1340.17(d).

United States v. Valdovinos, 760 F.3d 322, 326 (4th Cir. 2014) (internal quotation marks omitted).

In 2011, North Carolina passed the Justice Reinvestment Act ("JRA"). See 2011 N.C. Sess. Laws 2011-192 (codified as N.C. Gen. Stat. § 15A-1368, et. seq.). Among other things, the JRA increased the applicable maximum sentences for certain classes of felonies. For example, a 2009 conviction with a minimum sentence of 5-6 months had a corresponding maximum of 6-8 months. The JRA raised that corresponding maximum to 15-17 months. Compare N.C. Gen. Stat. § 15A-1340.17 (2009) with N.C. Gen. Stat. § 15A-1340.17 (2013). As of the effective date of the JRA, all felony offenses in North Carolina now have a maximum possible punishment of more than one year in prison – the lowest available maximum sentence on the structured sentencing grid is thirteen months. See N.C. Gen. Stat. § 15A-1340.17(c)-(d) (containing the punishment for a Class I, Level I, mitigated range felony). While neither the sentencing charts nor the language of the judgment mention it, N.C. Gen. Stat. § 15A-1368.2 assumes that all defendants "shall be released from prison for *post-release supervision* on the date equivalent to [their] maximum

imposed prison term . . . less nine months in the case of Class F through I felons . . . ." Id. § 15A-1368.2(a) (emphasis added). [1]  A prisoner cannot refuse post-release supervision.  Id. § 15A-1368.2(b).  "When a supervisee completes the period of post-release supervision, the sentence or sentences from which the supervisee was placed on post-release supervision are terminated."  Id. § 15A-1368.2(f).

**B. Defendant Stone's Criminal History**

The JRA's increased sentences applied to Defendant Stone, who committed Felony Larceny on or about March 27, 2012.  See Valdovinos, 760 F.3d at 324, n. 1 (noting that the JRA became effective in December 2011).  Defendant's offense of conviction was a Class H felony, combined with a Prior Record Level I, which resulted in a maximum presumptive sentencing range of 5-17 months and an actual sentencing range of 5-15 months.[2]  The text of the judgment, which is of critical importance today, stated in full:

> The Court, having considered the evidence, arguments of counsel and statement of defendant, Orders that the above offenses, if more than one, be consolidated for judgment and *the defendant be imprisoned for a minimum term of 5 months for a maximum term of 15 months in the custody of the N.C. DAC.*

Judgment, Def. Ex. 1 (emphasis added).

On December 17, 2014, a federal grand jury indicted Defendant Stone on two counts of violating 18 U.S.C. § 922(g)(1), commonly known as Possession of a Firearm by a Felon.  One of

---

[1] Class B1 through Class E defendants receive twelve months of post-release supervision.  Class A felons do not qualify for post-release supervision, because all Class A felonies are punishable by death or life without parole.  See N.C. Gen. Stat. § 15A-1368.2.

[2] Defendant Stone's presumptive minimum range was 5-6 months.  It appears from the record that the state judge chose 5 months as Stone's minimum, which carries a corresponding maximum of 15 months.  Had the judge used 6 months as Stone's minimum, his corresponding maximum would have been 17 months.  For either maximum sentence, the analysis would not change for this court, because each sentence carries a term of imprisonment that is greater than one year, and assuming *arguendo* that Defendant Stone is correct, either maximum would be less than a year when nine months are subtracted.

the elements of this offense requires that on the date of offense, the defendant must have "been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). The fundamental issue for the Court today is whether Defendant's state sentence qualifies as a predicate *federal* felony for § 922(g)(1) purposes. Defendant Stone argues that he did not incur a predicate felony in 2012, because his underlying sentence was comprised of two separate components – a **six-month** period of time spent in jail and a nine-month period of post-release supervision. Therefore, according to him, his felony larceny conviction resulted in a term of imprisonment of less than twelve months, which he argues makes his § 922(g)(1) conviction legally impossible. He would have the Court hold that the nine months spent on post-release supervision do not count towards a "term of imprisonment" for federal purposes; in other words, only the time spent living as an inmate in physical confinement (e.g., prison, penitentiary, jail, correctional facility, etc.) can be considered when calculating a defendant's maximum term of imprisonment. The Court disagrees with Defendant's argument for the reasons that follow.[3]

---

[3] The Court's reasoning and conclusion today parallels that of our sister district, the Eastern District of North Carolina, in the recent case of United States v. Bunn, 2015 WL 3891367 (E.D.N.C June 24, 2015). In that acse, defendant Bunn argued that his prior North Carolina convictions for Class H felonies, which were consolidated for judgment, did not qualify as predicate felonies under § 922(g)(1). Defendant Bunn received a 19-month maximum term of imprisonment, and, as the argument goes, because nine of those months were to be served on post-release supervision, he was not subject to a term of imprisonment exceeding twelve months as required for § 922(g)(1). Accordingly, he moved to dismiss count one of the indictment. See Bunn, 2015 WL 3891367, at *1. Bunn's case was initially referred to a magistrate judge who accepted this argument and recommended that count one be dismissed. See United States v. Bunn, 2015 WL 2058983, at *1 (E.D.N.C. Apr. 27, 2015). Upon review, the district court held to the contrary, finding that Bunn's criminal history did contain a predicate felony and denied the motion to dismiss. Aspects of the EDNC's analysis inform and support this Court's decision today. Further, the Court's ruling is in line with the Middle District of North Carolina's conclusion in United States v. Barlow, No. 1:14-cr-182-NCT-1 (M.D.N.C), currently on appeal before the Fourth Circuit, Case No. 15-4114.

## II. ANALYSIS

### A. Applicable Precedent

The Court begins its analysis with a chronological discussion of the applicable case law from this Circuit, which establishes the context in which the Court decides the distinct issue Stone's case presents. Today's outcome closely follows and relies on important principles animating previous Fourth Circuit decisions.

### 1. United States v. Simmons

Prior to 2011, this Circuit's standard for determining whether a prior North Carolina conviction was punishable by a prison term exceeding one year focused on "the maximum *aggravated* sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." United States v. Harp, 406 F.3d 242, 246 (4th Cir. 2005). A panel of the Fourth Circuit originally decided United States v. Simmons, 635 F.3d 140 (4th Cir.) on reh'g en banc, 649 F.3d 237 (4th Cir. 2011), under this framework. However, after the Supreme Court's decision in Carachuri-Rosendo v. Holder, 560 U.S. 563 (2010), the Fourth Circuit, sitting *en banc* in Simmons, overruled Harp, holding that Carachuri-Rosendo's "rationale precluded the use of 'an imagined worst-case offender' to calculate a defendant's maximum term of imprisonment for a prior conviction." Valdovinos, 760 F.3d at 325 (quoting United States v. Simmons, 649 F.3d 237, 249 (4th Cir. 2011)). The *en banc* Simmons decision held that, when calculating the defendant's maximum punishment, hypothetical aggravating factors could not be considered. Simmons, 649 F.3d at 244. Determination of the maximum punishment

> requires the examination of three pieces of evidence: the offense class, the offender's prior record level, and the applicability of the aggravated sentencing range. All three appear prominently on the first page of an offender's state record of conviction. See N.C. Forms AOC-CR-601, AOC-CR-603. *From this, it is a*

*simple matter to refer to the statutory table provided by the Structured Sentencing Act and compute the applicable maximum punishment.*

Id. at 247 n. 9 (emphasis added).

"Simmons's instructions ensures that offenders with similar criminal backgrounds who commit similar crimes will be sentenced to similar prison terms." Valdovinos, 760 F.3d at 328. The state sentence in Simmons authorized a maximum sentence of only eight months' community punishment. Id. at 241. Had the Government proved the existence of aggravating factors *and* demonstrated that Simmons possessed fourteen or more criminal history points, Simmons could have received an aggravated sentence of more than twelve months' imprisonment. Id. The Government did neither.

Stone's situation tells quite a different story than that of Simmons. The pervasive issue in Simmons was whether a hypothetical aggravation of a defendant's non-aggravated felony conviction could in turn serve as the basis for a predicate felony under § 922(g)(1). Facially, Simmons' sentence contained no physical confinement. Stone's sentence, based on the three Simmons factors, carried a maximum term of imprisonment of fifteen months, *on its face*, without any additional findings of aggravation or recidivism needed. Unlike Simmons or Carachuri-Rosendo, Stone's case does not require the Government to look at facts outside the record of conviction that "could have authorized" a term of imprisonment that exceeded one year. Therefore, the Court's approach does not contravene the Simmons' prohibition against considering a hypothetical "worst-case offender." See also, Bunn, 2015 WL 3891367, at *4. What Stone asks this Court to do today is effectively pierce the face of the judgment and read into it a bifurcated sentence, contrary to the Simmons' mandate that the Court only consider the aforementioned three factors.

## 2.  United States v. Edmonds

United States v. Edmonds, 679 F.3d 169, 171 (4th Cir. 2012) (vacated on other grounds), further illustrates the Fourth Circuit's ruling in Simmons.  A jury convicted Curtis Edmonds on four drug-related charges, and the district court sentenced him to life imprisonment.  See Edmonds, 679 F.3d at 171.  On appeal, he argued in relevant part that his sentence was improperly enhanced under both 21 U.S.C. § 851[4] and the United States Sentencing Guidelines, which increase sentences for drug offenses.  Id. at 176.  Edmonds contended that he had only received a 9-11 month sentence for one of his prior drug felony convictions, and it therefore did not qualify as a predicate offense needed for the sentencing enhancement.  The Fourth Circuit disagreed, noting

> [w]hat Edmonds fails to recognize, however, is that the qualification of a prior conviction *does not depend on the sentence he actually received but on the maximum sentence that he could have received for his conviction.*  . . . Under the North Carolina sentencing scheme, [Edmonds'] record level and class . . . subjected Edmonds to a presumptive minimum sentencing range of 9-11 months, and a maximum sentencing range of 11-14 months.  Because 14 months is the maximum that Edmonds presumptively could have received, we conclude that both of Edmonds' convictions were offenses that were "punishable by imprisonment for more than one year" . . . .

Id. at 176-77 (internal citations omitted) (emphasis added); see also Boyd v. United States, 2015 WL 506481, at *3 (W.D.N.C. Feb. 6, 2015) adhered to on reconsideration, 2015 WL 1234960 (W.D.N.C. Mar. 17, 2015) (following Edmonds on factually similar grounds).

In light of Edmonds, Stone's sentence (which was in the presumptive range) of 5-15 months is a qualifying felony for § 922(g)(1) purposes.  The Court need not delve into the particulars of what Stone "actually" received or how his sentence was ultimately administered, as Defendant argues.  See Edmonds, 679 F.3d at 176-77; see also United States v. Kerr, 737 F.3d 33,

---

[4] According to this statute, a person previously convicted of a felony drug offense can receive an enhanced sentence in later drug, firearm or immigration convictions.

38 (4th Cir. 2013) (discussed below). Rather the Court can decide from the face of the judgement that Stone was sentenced to a term of imprisonment in excess of twelve months.

### 3. __United States v. Kerr__

Kerr took Edmonds one step further. In Kerr, a jury convicted the defendant of possession of a firearm by a convicted felon. At sentencing, Kerr objected to his designation as an armed career criminal under 18 U.S.C. § 924(e), which requires the government prove that a defendant have a combination of three convictions for violent felonies or serious drug offenses. Kerr, 737 F.3d at 34. The defendant's criminal record contained three North Carolina convictions for felony breaking and entering. Id. For those convictions, the state court judge sentenced Kerr within the a *mitigated* range of 8-10 months' imprisonment. Thus, Kerr presented the question of whether the district court must "consider the fact that the defendant received a mitigated sentence of less than one year in prison under North Carolina law for those felonies." Id. at 38. The Fourth Circuit answered no. The majority disdained the dissent's "myopic focus" on the *actual* sentence and looked only to the facial length of the maximum presumptive range, *even when the state court judge had independently found the existence of mitigating factors.* Id. at 38-39; see also United States v. Lynn, 2014 WL 4792223, at *7 (E.D. Va. Sept. 24, 2014) appeal dismissed, 594 F. App'x 196 (4th Cir. 2015) (following Kerr on factually similar grounds).

Thus, for federal sentencing purposes, the maximum presumptive range is the determinative number. While Defendant Stone is correct that he could not have spent a day longer than six months in physical confinement without an additional bad act, as discussed below a defendant can serve a term of imprisonment outside the four walls of a prison. Nothing in the North Carolina sentencing tables prescribes two separate maxima (one for physical confinement

and one for the overall maximum length).  Thus, the statutory maximum number written into the structured sentencing statute (and on the face of the judgment) controls, not the number of days a defendant actually spends in physical confinement.

**4.  <u>United States v. Valdovinos</u>**

In <u>Valdovinos</u>, the defendant pled guilty to unlawfully entering the United States after being deported.  <u>Valdovinos</u>, 760 F.3d at 323.  As the Fourth Circuit explained, the undersigned "increased Valdovinos' sentence [under U.S.S.G. § 2L1.2(b)(1)(B)] on the ground that he illegally reentered the country after a prior North Carolina conviction for felony drug trafficking, i.e., a drug offense punishable by more than one year in prison."  <u>Id</u>.  The defendant argued on appeal that "his prior conviction was not punishable by more than a year in prison because he was sentenced pursuant to a plea agreement that capped his prison term at 12 months."  <u>Id</u>. at 323-24.  The Fourth Circuit affirmed the increase in his sentence, following <u>Simmons</u>, finding that "Valdovinos's prior [state] conviction carried a maximum statutory sentence of 16 months in prison . . . ."  <u>Id</u>. at 324.  In other words, the statutory maximum trumped a plea agreement.  "The critical question is simply whether he was convicted of an offense punishable by more than one year in prison."  <u>Id</u>. at 325.  In <u>Valdovinos</u>, and in the instant case, the "North Carolina conviction was punishable by imprisonment exceeding one year based on <u>his</u> prior record level, offense class, and sentencing range.  It therefore qualifies as a federal sentencing predicate."  <u>Id</u>. at 327.

While this Court recognizes that the Fourth Circuit did not purport to interpret the JRA when deciding <u>Valdovinos</u>, its reference to the statute is telling.  Footnote 1 states

> In December 2011, the North Carolina legislature amended the [North Carolina Structured Sentencing Act] to provide for higher maximum terms of imprisonment.  <u>See</u> N.C. Gen. Stat. § 15A-1340.17(d).  The maximum sentence for an offender in Valdovinos's position (Class G felony, prior record level of I, and no findings of

> mitigation or aggravation) is now 25 months' imprisonment. Valdovinos was convicted before the amendment, however, so the previous maximum penalty of 16 months applies here.

Id. at 324 n.1.

As the Government argues here, it is notable that in neither the text of the opinion nor the footnote did the court distinguish between a period of physical confinement and post-release supervision. The court spoke of the maximum sentence as a collective whole, referencing it by a number of months, and the court did not bifurcate the sentence into two components. At best, this language provides an implicit recognition of this ruling - that post-release supervision is an inherent part of the term of imprisonment in North Carolina.

## 5. <u>United States v. Bercian-Flores</u>

In the recent decision of <u>United States v. Bercian-Flores</u>, 786 F.3d 309 (4th Cir. 2015), the Fourth Circuit upheld the undersigned's imposition of a sentence enhancement based on the defendant's prior felonious conviction for unlawfully transporting aliens. <u>United States v. Bercian-Flores</u>, 786 F.3d at 310-11. While the defendant's prior felony carried a statutory five-year maximum, but the United States Sentencing Guidelines range was zero to six months, and he was sentenced to only 107 days' imprisonment. <u>Id</u>. The defendant objected to the twelve-level sentencing enhancement, arguing that his previous conviction did not constitute a felony because he could not have received a sentence of more than one year under the mandatory Sentencing Guidelines in effect in 1997. However, this Court found that his statutory maximum sentence and not his Guidelines range controlled. <u>Id</u>.

In determining whether this Court properly sentenced Bercian-Flores, the Fourth Circuit noted that "the statutory maximum sentence set by *Congress*, and not the top sentence in [the

defendant's] Guidelines range, is determinative of whether his prior conviction constituted a predicate felony." Id. at 315 (emphasis added). This was true even in the pre-Booker [5] days when the Sentencing Guidelines were mandatory. See Bercian-Flores, 786 F.3d at 315-16.

According to Bercian-Flores, the most controlling piece of sentencing law is what the applicable legislative body has imposed. Id. For Bercian-Flores, that body was Congress, see id., and for Stone, it is the North Carolina General Assembly. Unlike the Sentencing Guidelines, which are discretionary and written by the United States Sentencing Commission, the North Carolina maximum terms of imprisonment are a statutory mandate imposed by a legislative body. See id. at 5 ("[T]he Structured Sentencing Act 'does not establish a "guidelines system[]"; rather, it mandates specific sentences.'") (quoting Simmons, 648 F.3d at 244 (citing State v. Norris, 360 N.C. 507 (N.C. 2006))).

This Court's decision errs on the side of deference to the state legislature and refuses to read into the statute something that is clearly not there. Had the General Assembly envisioned a bifurcated sentencing scheme, it would have amended the sentencing laws to require judges to impose a bifurcated sentence, as federal judges do when imposing a period of supervised release. The legislature could have created such a scheme by preserving the existing maxima and adding *en masse* a period of post-release supervision for all felonies, in a class-by-class manner. Instead, the NC General Assembly extended each corresponding maximum sentence for each statutory minimum and nowhere required judges to bifurcate the sentence when announcing it to the defendant.

---

[5] See United States v. Booker, 543 U.S. 220 (2005).

The legislature chose to reinforce the severity of the punishment by increasing the maxima while simultaneously decreasing the prison population through the mandatory scheme of post-release supervision. "[T]he Act reflects 'North Carolina's judgment as to the seriousness of a North Carolina crime'" and "ensures that objective, uniformly applicable factors determine each offender's maximum punishment." See Valdovinos, 760 F.3d at 328; see also Simmons, 649 F.3d at 249 ("Surely well-established federalism principles do not permit a federal court to reject North Carolina's judgment as to the seriousness of a North Carolina crime, prosecuted in a North Carolina court and adjudicated by a North Carolina judge.") Reading into the sentence a bifurcation or componental punishment "fails to give effect to the statute as written, and thus usurps the proper role of the [legislature]." Simmons, 649 F.3d at 252.[6] The legislature said, the sentence shall be "x." The nine months of post-release supervision, applied after the fact by an administrative agency, do not override or control that legislative mandate.

## B. Avoiding an Inconsistent and Unworkable Method of Calculating "Term of Imprisonment"

As explained above, the Fourth Circuit has consistently rejected efforts to focus the Simmons analysis on places other than the maximum possible sentence to which a defendant is exposed. This Court likewise refuses to look behind the sentence Defendant Stone received to the sentence he ultimately served. Not only would such a focus disregard an entire line of Fourth Circuit decisions and North Carolina state law, it would create an inconsistent and unworkable

---

[6] The Court also defers to the legislature's choice on the so-called "single sentence" rule. According to Stone, when a defendant has multiple sentences of imprisonment imposed to run consecutively, he is only assessed a single nine-month period of post-release supervision (i.e., he is not assessed the nine-month period for each individual sentence). Again, this legislative choice does not prove that the nine-month period is a separate punishment imposed on the defendant. Post-release supervision is included in the "term of imprisonment" imposed on the defendant, whether he is convicted of one crime or ten crimes. Further, the section outlining the "single sentence rule," N.C. Gen. Stat. § 15A-1354(b), is primarily designed to address how the Division of Adult Correction sets parole eligibility dates for defendants serving more than one sentence, not to provide meritorious support for Defendant's argument here.

precedent for a myriad of defendants in the future, both state and federal. Stone's approach would create a thorny rule that would put federal judges in the unprecedented position of determining whether a state court sentence qualifies as a federal predicate based upon the manner in which the state administered the sentence months, or sometimes years, after the sentence had been imposed by the state judge. Federal courts have historically declined to stretch their analysis of sentencing issues into the state's administration of a sentence after it is imposed and executed. See, e.g., United States v. Carrasco-Mateo, 389 F.3d 239, 244 (1st Cir. 2004) ("The phrase 'sentence imposed' traditionally has meant exactly what the words imply: the punishment meted out by the sentencing court. An offender's early release cannot change the contours of the original sentence imposed after the fact.") (internal citations omitted); United States v. Garcia-Gomez, 380 F.3d 1167, 1173 (9th Cir. 2004) (noting that, in cases in which defendants are subject to parole or other early-release programs, "we have declined to take into account the reduced sentences served by those inmates unless the actual decision to release the inmate early was made by the sentencing judge.").

Stone's approach would require a federal court to individually look at each defendant to determine whether he served an additional period of physical confinement after violating his post-release supervision. A case-by-case inquiry would be unavoidable. This approach would create a fundamental divide between defendants who served more than a year in physical confinement, based on a combination of initial physical confinement and a revocation term or terms of additional physical confinement for violations of post-release supervision, versus defendants who had not actually served more than a year in physical confinement during the course of their sentence.

For example, if two defendants were convicted of a state felony and sentenced to a fifteen-month term of imprisonment, they would be placed in physical confinement for six months and then placed on post-release supervision for the remaining nine months. Suppose Defendant A immediately violated his release, and thereafter served the remainder of his original term physically confined. Meanwhile, Defendant B completed his post-release supervision without issue. Both defendants were released - one from jail and one from supervision - at the end of the nine months. Defendant Stone's argument would result in either (1) Defendant A *never* being eligible for a § 922(g)(1) conviction, even though he actually served a total of fifteen months in physical confinement (6 months plus 9 months)[7], or (2) only Defendant A being eligible for a § 922(g)(1) conviction, and not Defendant B, even though both defendants' criminal history contained the exact same felony conviction. The ruling herein proactively deters both inconsistencies from occurring in the future. [8]

## C. Comparison to the Federal System

While the Court's decision today flows from a straightforward application of Fourth Circuit precedent, a comparison of "post-release supervision" to the federal sentencing system also sheds helpful light on today's analysis.

As noted above, neither the sentencing table of the North Carolina sentencing statute nor the face of Defendant's judgment makes any distinction that the last nine months of his sentence

---

[7] See also, Bunn, 2015 WL 3891367, at *5 ("The court cannot accept the proposition that a defendant could be punished by more than one year in prison for an offense that does not qualify as 'punishable by imprisonment for a term exceeding one year,' but that is where defendant's approach leads.") (internal citation omitted).

[8] This is not to mention the discrepancy that Defendant's rule would create between § 922(g)(1) and the NC equivalent of felony possession, N.C. Gen. Stat. § 14-415.1. Under Stone's rule, a defendant with Stone's criminal history would qualify for the state offense of felony possession under § 14-415.1(b)(1), but not the federal offense. The Court's ruling today is, at the very least, consistent with the parallel crime at the state level.

will at least be initially served on post-release supervision, instead of in physical confinement. The entire punishment is referenced as "imprisonment." <u>See</u> Judgment, Def. Ex. 1. If the legislature, the judgment form, or the sentencing judge had characterized the punishment as "6 months incarceration and 9 months post-release supervision," the analysis would likely be different. Then, the North Carolina structured sentencing scheme would be more akin to federal sentences, which are bifurcated - at sentencing and by statute - into a term of imprisonment and a term of supervised release. The nonexistence of a distinction here demonstrates that the statute assumes that the sentence imposed by the judge is the time that the defendant will serve *as imprisoned*, whether he lives, eats and sleeps in a prison, a county jail, a halfway house, or his own home (as part of post-release supervision). The JRA directs the imposition of a minimum and maximum term of imprisonment without earmarking different time frames for different categories of punishment. For the Court to make that distinction now would be erroneous.

The Court ultimately views the North Carolina system as establishing different *conditions of confinement* for convicted felons. Varying levels of detention are triggered when the defendant passes certain time periods in serving out his sentence. Practically envisioning how this plays out clarifies the confusion that the semantics seem to create. When the prisoner has nine months left on his originally-imposed term, he gets to serve the rest of his sentence at his home, instead of in physical confinement at a prison or jail. He is still carefully supervised by law enforcement. Supervision by the government is neither necessary nor sufficient for this analysis, but it does support the conclusion that he is still serving a term of imprisonment, even though he has more freedom than he did on Day One of his sentence. The Supreme Court has held in the habeas corpus context that release from physical imprisonment to parole "still imposes conditions which

significantly confine and restrain [a defendant's] freedom" and those constraints are enough to keep him "in custody" for collateral attack purposes.  See Jones v. Cunningham, 371 U.S. 236, 241-43 (1963) (finding that the petitioner was "in custody" for purposes of the statute when he was merely in the custody of the Virginia Parole Board).  The Jones' majority wrote

> In fact, as well as in theory, the custody and control of the Parole Board involves significant restrains on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally. Petitioner is confined by the parole order to a particular community, house, and job at the sufferance of his parole officer.  He cannot drive a car without permission. He must periodically report to his parole officer, permit the officer to visit his home and job at any time, and follow the officer's advice.  He is admonished to keep good company and good hours, work regularly, keep away from undesirable places, and live a clean, honest and temperate life.  Petitioner must not only faithfully obey these restrictions and conditions but he must live in constant fear that a single deviation, however slight, might be enough to result in his being returned to prison . . . .  *It is not relevant that conditions and restrictions such as these may be desirable and important parts of the rehabilitative process; what matters is that they significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do.*

Id. (emphasis added).

Such is the case with post-release supervision.  Section 15A-1368 sets out the "controlling conditions" and "reintegrative conditions" of post-release supervision, violations of which may result in revocation of post-release supervision.  The lists parallel the one given in Jones, including admonishments to work faithfully, attend rehabilitation, support family, continue education, and avoid drugs, as well as requirements to remain in a specified geographic area, not possess a firearm, report to a post-release supervision officer on a regular basis, and allow a post-release supervision officer to visit the supervisee's home at reasonable times.  See N.C. Gen. Stat. § 15A-1368.4.[9]

---

[9] There are in fact further similarities between the system of post-release supervision and North Carolina parole. Compare N.C. Gen. Stat. § 15A-1368(a) et. seq. with N.C. Gen. Stat. § 15A-1371 et. seq.

According to Jones, these types of conditions rendered a parolee "in custody" for habeas purposes. See Jones, 371 U.S. at 241-43.

Unlike parole or probation, which are given as a separate part of a sentence in North Carolina, post-release supervision is *built in* and *literally part of* the sentence imposed and enunciated by the state judge. According to its very definition, post-release supervision, and its attendant conditions begin *before* a defendant is viewed as "released" under North Carolina law, the strong implication being, before his punishment is over. According to the plain language of the statute, post-release supervision is "the time for which a sentenced prisoner is released from prison *before the termination of his maximum prison term* . . . ." N.C. Gen. Stat. § 15A-1368 (emphasis added). This definition makes clear that a defendant has not served out his maximum prison term when he is placed on post-release supervision. Since a defendant is released *before* his maximum term of imprisonment is terminated, the post-release supervision period is seen as a *completion* of his term of imprisonment, not a release that changes his status from imprisoned to non-imprisoned. The timing propounded by the statute controls the Court's decision today.

Federal supervised release differs greatly from state post-release supervision. Unlike the North Carolina system, in which post-release supervision is built into the total prison term, federal supervised release is served *after* and *in addition to* a defendant's completed prison sentence. See, U.S.S.G. Ch. SEVEN, Pt. A, Introduction ("[S]upervised release does not replace a portion of the sentence of imprisonment, but rather is an order of supervision in addition to any term of imprisonment imposed by the court."); 18 U.S.C. § 3624(e) ("A term of supervised release does not run during any period in which the person is imprisoned . . . ."). "Unlike parole, a term of supervised release *does not replace a portion of the sentence of imprisonment* . . . ." U.S.S.G. Ch.

SEVEN, Pt. A, Introduction; see also, United States v. Granderson, 511 U.S. 39, 50 (1994) ("Supervised release, in contrast to probation, is not a punishment in lieu of incarceration."); United States v. Buchanan, 638 F.3d 448, 451 (4th Cir. 2011) ("[Supervised release] is a unique method of post-confinement supervision that fulfills rehabilitative ends, distinct from those served by incarceration.") (internal citations omitted).

Indeed, at sentencing, the district court actually announces two separate terms, one for imprisonment and one for supervised release. In contrast, Defendant Stone's North Carolina judgment stated that he was sentenced to a term of imprisonment of 5 to 15 months *in the custody of N.C. DAC*. The judgment references the sentence collectively – there is no bifurcated punishment as in the case of federal supervised release. If all goes in Defendant's favor, he will ultimately leave physical confinement when he has nine months left on his original sentence. Then, when he completes his period of post-release supervision, "the sentence or sentences from which [he] was placed on post-release supervision are terminated." N.C. Gen. Stat. § 15A-1368.2(f).

The distinction becomes even more apparent when one compares what happens to a defendant who violates the terms of his post-release supervision versus federal supervised release. In the federal system, if a defendant violates the terms of his supervised release, he may be returned to physical confinement and serve "all or part of *the term of supervised release.*" 18 U.S.C. § 3583(e)(3) (emphasis added). The federal system considers the first part of the sentence (the term of imprisonment) as completed; therefore, a violation of supervised release is punished by looking at the length of time remaining on the defendant's term of supervised release.

However, if a North Carolina supervisee violates a condition of his post-release supervision, the Post-Release Supervision and Parole Commission can "continue the supervisee on the existing supervision, with or without modifying the conditions or, if continuation or modification is not appropriate," the Commission can revoke post-release supervision. N.C. Gen. Stat. § 15A-1368.3(c). If a defendant violates post-release supervision by committing another crime or absconding, he can be returned to prison for a period "up to the time remaining on [his] maximum imposed terms." Id. at § 15A-1368.3(c)(1). For any other violation, he can be returned to prison in three-month increments up until the time remaining on his maximum imposed term. Id. §15A-1368.3(c). The prisoner "shall not be rereleased on post-release supervision if [he] has served all the remaining time on [his] maximum imposed term." Id. Whether the defendant returns to prison for the rest of his originally imposed term or for three months, the length of time always relates back to the *originally imposed term of imprisonment*. Further, the time that a defendant spends in physical confinement while awaiting determination of his revocation is treated as part of the original sentence of imprisonment. N.C. Gen. Stat. § 15-196.1. Once again, this is because the period of post-release supervision is an inherent part of what was originally imposed.

This principle played out in State v. Corkum, in which the defendant pled guilty to solicitation to commit second-degree statutory rape and contributing to the delinquency of a juvenile. 735 S.E.2d 420, 421 (N.C. App. 2012). In accordance with the North Carolina structured sentencing scheme, the defendant was placed on post-release supervision with nine months remaining on his active sentence. Id. The defendant violated the terms of his post-release supervision twice. Id. As a result, his "post-release supervision was revoked and he was incarcerated to serve the remainder of his original sentence," which was about nine months. Id.

The N.C. Court of Appeals recognized that "the activated nine-month sentence [was] a result of the original charges." Id. at 423. It clearly stated this principle twice in the opinion:

> There is no new sentence imposed as a result of a revocation of post-release supervision; only the remaining portion of the original sentence is activated.
>
> . . .
>
> As stated earlier, the nine-month sentence is the remainder of the original sentence which is activated as a result of defendant's failure to comply with terms of his post-release supervision. It is not a new sentence.

Id. at 423-24.

Post-release supervision is a privilege that may be revoked on occasion of a defendant's bad behavior. This does not mean, as Defendant Stone asserts, that post-release supervision is a separate punishment altogether. As the government argues, the fact that revocation of supervision results in imposition of the balance of the original sentence demonstrates that post-release supervision is not regarded as an entity separate from a sentence but as an inherent part of a term of imprisonment. See cf., United States v. Woodrup, 86 F.3d 359, 361-62 (4th Cir. 1996) ("[A] sentence imposed upon the revocation of probation or parole is not punishment for the conduct prompting the revocation, but, rather, a modification of the original sentence for which probation or parole was authorized.").

Defendant Stone argues that because a defendant on post-release supervision cannot earn credit against his maximum term of imprisonment, the two are "clearly distinguishe[d]" and should be viewed as such. See Doc. No. 17 at 3 (citing N.C. Gen. Stat. § 15A-1368.3(c)(2)). However, this portion of the statute cannot be read in a vacuum. The inability to earn credit while on post-release supervision provides an incentive for the defendant to comply with his terms of release; it does not bifurcate the punishment given at sentencing – which is always described as a "term of imprisonment" for a certain number of months. When a defendant is placed on post-release

supervision, the remaining months of his sentence still exist. The prisoner has been given a chance to serve these last nine months in more favorable conditions of confinement, but when a defendant violates the terms of his post-release supervision, he can be returned to physical confinement. Therefore, post-release supervision is not merely "supervision"; it is actually a form of confinement, albeit one that is more favorable to a defendant than serving the term of imprisonment in a prison or jail. If a supervisee is returned to physical confinement after a violation of release, the period of post-release supervision is tolled. If a defendant is returned to confinement on Day 31 of his post-release supervision period for a three-month revocation period, he is released at the conclusion of the three-month revocation period on *Day 32* of his post-release supervision period, thus lengthening his overall served sentence (subject to his maximum imposed term per N.C. Gen. Stat. § 15A-1368.3(c)(1)).

Needless to say, the scheme is fluid, and is fully dependent on the actions of the defendant and the administrative decisions of the North Carolina Department of Corrections and the Parole Commission. No matter what the sentence looks like at the conclusion, the only thing a federal court need be concerned with is what was statutorily imposed by the sentencing judge, which for all felony convictions in North Carolina will exceed twelve months. The Court declines to make § 922(g)(1) convictions reliant on the inner workings of a state agency's administrative functions and decisions.

The way credit is awarded for time served in North Carolina also proves that post-release supervision is not a separate component of the sentence. State judges have the authority to give imprisonment credit for "the total amount of time a defendant has spent . . . in confinement . . . as a result of the charge that culminated in the sentence." N.C. Gen. Stat. § 15-196.1. State judges

do this even when the sentence includes post-release supervision. Thus, a prisoner who spent four hundred days in confinement before his conviction could receive that amount of credit for a 5-15 month sentence, even though only six of those months, at least initially, were supposed be served in physical confinement. This proves that the fifteen-month maximum *is* the term of imprisonment and that post-release supervision is merely a beneficial condition of confinement, not a separate component of the punishment.

Finally, Defendant Stone argues that the procedural protections afforded to a defendant who has violated the conditions of post-release supervision speak to how this portion of his sentence is an entirely separate component of punishment.[10] However, the seminal case of United States v. Booker, 543 U.S. 220, 244 (2005), which held that all mandatory sentencing enhancements must be supported by a jury finding of the conduct supporting the enhancement, undermines Defendant's argument. When a North Carolina defendant violates the terms of his post-release supervision, he is entitled to a hearing to determine if he will go back to prison, but no jury finding is needed, even though he is receiving a "harsher" (or at least less favorable) punishment than he was originally given. This scheme complies with Booker because the defendant *was already sentenced* to the fifteen-month term of imprisonment by the sentencing court.

"Contrary to defendant's suggestion, the procedure for revocation of post-release supervision underscores the importance of the original judgment of conviction which sets the

---

[10] A supervisee is entitled to a preliminary hearing on his supervision violation within seven working days of an arrest for a violation. At this hearing, the supervisee may appear and speak on his own behalf and may question witnesses and adverse informants. If the judicial officer conducting the hearing finds that there is probable cause to believe that the supervisee violated the terms of his supervision, he may be held in custody until his revocation hearing. Before finally revoking post-release supervision the Commission must hold a final hearing within forty-five days of the preliminary hearing. See N.C. Gen. Stat. § 15A-1368.6.

maximum sentence of imprisonment . . . ."  United States v. Bunn, 2015 WL 3891367 (E.D.N.C

June 24, 2015).  While the statute assumes that a defendant will spend the last nine months of his

sentence on post-release supervision, if he cannot be entrusted with the benefits of post-release

supervision, it will be revoked.

> While the Commission may impose various degrees of custody for revocation of
> post-release supervision, it always must act within the range provided for in the
> original judgment of conviction.  Thus, as mandated by Simmons, the judgment of
> conviction provides both the starting place and the final word on whether an offense
> is punishable by a term of imprisonment exceeding one year.

Id. at *4.

**D. Comparison to Suspended Sentences**

Convicted felons in North Carolina who receive a suspended sentence of imprisonment

and successfully complete a period of probation in lieu of physical confinement do not serve a

period of post-release supervision.  See e.g., State v. Camp, 263 S.E.2d 592,594 (N.C. 1980)

(holding that courts generally lack authority over a defendant once a probationary term expires).

In such a case, a defendant's sentence is never executed.  However, if a defendant violates

probation, his suspended sentence is activated and then executed; that defendant would be released

from physical confinement to serve a period of post-release supervision nine months before the

expiration of his maximum imposed term.  See N.C. Gen. Stat. §§ 15A-1344, 1345(e), 1368.2,

1368.6.

While the Court has not found a case which discusses a mandatory program similar to that

of North Carolina post-release supervision, two circuits have addressed how to treat a scheme of

mandatory suspended sentences.  See United States v. Caicedo-Cuero, 312 F.3d 697, 704-05 (5th

Cir. 2002); United States v. Arellano-Torres, 303 F.3d 1173, 1178-79 (9th Cir. 2002).  Both the

Fifth Circuit and the Ninth Circuit considered state systems authorizing maximum prison sentences greater than one year for drug possession. But for first-time offenders, courts had to impose a prison sentence, suspend it, and sentence the defendant to probation. Probation could be revoked, however, and offenders sent to prison to serve their suspended sentence. See Caicedo-Cuero, 312 F.3d at 699; Arellano-Torres, 303 F.3d at 1178-79. Both the Fifth and Ninth Circuits held that because the defendant's suspended sentence could be revoked, and the defendant could serve the suspended prison sentence, the defendant's maximum possible punishment is the maximum authorized prison sentence. See Caicedo-Cuero, 312 F.3d at 704-05; Arellano-Torres, 303 F.3d at 1179.[11] Thus the federal sentencing judge should focus on the sentence meted out by the state sentencing judge, not how the sentence is ultimately administered by state administrative authorities.

### III. CONCLUSION

While one legitimate basis for the Court's ruling is that Defendant Stone *could have been* physically confined for his maximum sentence length of fifteen months if he misbehaved on post-release supervision,[12] the crux of the Court's ruling is found in the text of the statute and the face of the sentence – both of which prove that Defendant Stone was in fact *punished* and *serving time* for fifteen months of his life. *A defendant does not have to be locked up to be serving a term of imprisonment.* He can serve a term of imprisonment in a prison or jail cell, a halfway house, a camp, or at his home, under various degrees of supervision whether or not there are prison walls to be found. See, Jones v. Cunningham, discussed supra. Under North Carolina law, no matter

---

[11] The Ninth Circuit reached that conclusion even though it had already rejected the "hypothetical defendant" approach that Carachuri-Rosendo and Simmons later rejected. See Arellano-Torres, 303 F.3d at 1178.

[12] See Bunn, 2015 WL 3891367, at *5.

where he is located, a defendant is still serving his maximum term of imprisonment, until his sentence is terminated by state authorities.

The statute itself allows for a limited release even while it considers the defendant to still be serving his imposed term of imprisonment. Because post-release supervision can be revoked, it is viewed as a privilege and/or beneficial condition of confinement. It is not "release" as that term is used as the antonym of "imprisoned." Rather, it is a gradual decrease in the severity of punishment that happens to be triggered, initially, at the same time period (last nine months) for each Class F through Class I North Carolina felon. Therefore, this Court declines to adopt Defendant Stone's narrow definition of "term of imprisonment" as synonymous with "physical confinement," "custody," or "incarceration." It instead directly follows the state statute and legislative punishment scheme. This Court rejects the notion that a physical or geographical distinction is more binding or more important than the text of the statute.

Because, the mandatory period of post-release supervision is an inherent part and completion of the defendant's maximum sentence, as imposed by the sentencing judge and recorded on the face of the judgment, Defendant Stone's state felony conviction resulted in a term of imprisonment greater that one year and therefore qualifies as a federal sentencing predicate for § 922(g)(1) purposes. Defendant's Motion to Dismiss is accordingly **DENIED**.

**IT IS SO ORDERED.**

Signed: July 10, 2015

Frank D. Whitney
Chief United States District Judge

25